# Exhibit 2

**EMPLOYEE CONFIDENTIALITY AND NON-COMPETE AGREEMENT**

This EMPLOYEE CONFIDENTIALITY AND NON-COMPETE ("Agreement") is entered into by and between Hercules Pharmaceuticals, Inc., a New York corporation, with its principal place of business located at 27 Seaview Boulevard, Port Washington, New York 11050, (the "Employer") and Brant Cherne (the "Employee") (the Employer and the Employee are collectively referred to herein as the "Parties") as of July 11, 2018 (the "Effective Date").

WHEREAS, the Employee has accepted at-will employment with the Employer.

WHEREAS, the Employee desires to give, and Employer desires to receive from Employee, certain promises and restrictive covenants in connection with Employee's employment; and

WHEREAS, the Employer and Employee desire to set forth in writing the terms and conditions of their agreements and understandings;

NOW, THEREFORE, in consideration of the Employee's employment and continued employment, which the Employee acknowledges to be good and valuable consideration for the Employee's obligations hereunder, the Parties hereto, intending legally to be bound, hereby agree as follows:

1. Scope of Employment

    a. Position and Duties. Employee is an employee of Employer with the title of Director of Business Development. Employee further agrees that over the course of his employment, he shall use his reasonable best efforts and his skills and experiences in the best interests of Employer. Employee's job duties, subject to Employer's right to give specific direction, shall include, without limitation, the implementation of sales duties, that will include, but not be limited to, enabling members of the supply chain (including manufactuers, repackagers, wholesale distributors, dispensers, and third-party logistics providers) to attain Drug Supply Chain Security Act compliance in an efficient, interoperable, and secure manner and performing such operational duties as may be assigned to him from time to time by Employer. Except as may be mutually agreed between Employer and Employee, Employee shall be based at Employer's headquarters located in Port Washington, New York except for when business needs require Employee to travel on a temporary basis.

    b. Exclusive Efforts. During Employee's employment by Employer, Employee shall render services to Employer exclusively, and shall not render, directly or indirectly, any services or engage in business activities, offered or in development by Employer at any time during Employee's employment by Employer, on behalf of any other person or entity, either as an employee, employer, consultant, agent, principal, partner, equityholder, corporate officer, director, or in any other individual or representative capacity, that is directly or indirectly competitive with or otherwise harmful to, any business or other activity then conducted by Employer, without the prior written consent of Employer. "Competitive" shall refer to any enterprise, activity, or business that competes with the Employer in any of its material businesses, including, without limitation, the Employer's compliance programs associated with community pharmacy and specialty pharmacy, as well as the Employer's wholesale distributor business. Employee agrees to serve Employer faithfully, to execute to the reasonable best of his abilities the duties of his position, and to devote his entire business time, attention, and efforts to the interests and business of Employer. Employee represents and warrants to Employer that he is not under any contractual commitment which prohibits or limits his employment by Employer or which is inconsistent with his duties as set forth in this Agreement.

    c. Compliance with Laws and Policies. Employee agrees at all times to comply in all material respects to all applicable laws, rules and regulations related to the business of the Employer and with the policies, procedures and practices of Employer in effect from time to time.

2. Confidential Information and Trade Secrets

    a. Acknowledgment of Confidential Information and Trade Secrets. The Employee understands and acknowledges the following:

        (i)     During the course of employment, the Employee will have access to and learn about the Employer's confidential, proprietary, and trade secret information.

        (ii)    Employer has invested, and continues to invest, substantial time, money, and specialized knowledge into developing its resources, generating customer and potential customer lists, developing compliance programs, training its employees, marketing and improving its business, developing pricing lists for its products, and selling products and/or services. As a result of these efforts, Employer has created, and continues to use and create, Confidential Information and trade secrets, as defined herein. The Employee understands and acknowledges that the Employer invested significant time and expense in developing the Confidential Information, trade secrets and goodwill.

    (iii)  The Confidential Information and trade secrets provide Employer with a competitive advantage over others in the marketplace and that Employer would suffer irreparable harm if Confidential Information and trade secrets are disclosed to its community pharmacy, speciality pharmacy and wholesale distributor competitors.

    (iv)  The nature of the Employee's position gives the Employee access to and knowledge of Confidential Information and trade secrets and places the Employee in a position of trust and confidence with the Employer and that the Employee will benefit from the Employer's goodwill.

    (v)  The restrictive covenants herein are necessary to protect the Employer's legitimate business interests in its Confidential Information, trade secrets and goodwill. The Employer's ability to reserve these for the exclusive knowledge and use of the Employer is of great competitive importance and commercial value to the Employer and that the Employer would be irreparably harmed if the Employee violates the restrictive covenants in this Agreement.

  b.  <u>Confidential Information and Trade Secrets Defined</u>.

    (i)  For purposes of this Agreement, "Confidential Information" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic, or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases, manuals, records, articles, systems, material, sources of material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, and client information of the Employer or its businesses or any existing or prospective customer, supplier, investor, or other associated third party, or of any other person or entity that has entrusted information to the Employer in confidence.

    (ii)  Trade secrets are defined as information of Employer, including, but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that pertains to the Employer's compliance program, pricing and customer lists that: (1) derives independent economic value, actually or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

    (iii)  The Employee understands that the above list is not exhaustive, and that Confidential Information and trade secrets also include other information, whether or not it is marked as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

    (iv)  The Employee understands and agrees that Confidential Information and trade secrets include information developed by the Employee during the employment, as if the Employer furnished the same Confidential Information and trade secrets to the Employee in the first instance.

    (v)  Confidential Information and trade secrets shall not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that such disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

3. <u>Restrictive Covenants</u>.
  a.  <u>Non-Disclosure and Use Restrictions</u>.

    i.  The Employee agrees and covenants: (A) to treat all Confidential Information and trade secrets as strictly confidential; (B) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information and trade secrets, or allow them to be disclosed, published, communicated, or made available, in whole or part, to any entity or person whatsoever (including other employees of the Employer) not having a need to know and authority to know and use the Confidential Information and trade secrets in connection with the business of the Employer; (C) to store all documents, records, files, media, or other resources containing any Confidential Information and trade secrets on technology issued by the Employer only; (D) not to use any non-Employer issued technology but to instead solely carry out responsibilities on technology issued by the Employer; (E) not to access or use any Confidential Information and trade secrets, and not to copy any documents, records, files, media, or other resources containing any Confidential Information and trade secrets, or remove any such documents, records, files, media, or other resources from the office premises or control of the Employer, except as required in the performance of the Employee's authorized employment duties; and (F) employee understands and acknowledges that this obligation applies not only to technical information and customer information, but also to any business information that Employer treats as confidential.

Employer agrees that all Confidential Information and trade secrets of Employer are to be used by him solely and exclusively for the purpose of conducting business on behalf of Employer. If Employee resigns or is terminated from his employment for any reason, he agrees to immediately return all Confidential Information and trade secrets maintained by him in his office and/or home, and separately use reasonable efforts to remove or destroy any Confidential Information and trade secrets maintained on personal electronic devices.

    ii.  Nothing herein shall be construed to prevent disclosure of Confidential Information and trade secrets as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. To the extent permitted by law, the Employee shall promptly provide written notice of any such order to the Employer to enable Employer to seek a protective order or otherwise prevent such disclosure.

    iii.  The Employee understands and acknowledges that the Employee's obligations under this Agreement with regard to any particular Confidential Information and trade secret shall commence immediately upon the Employee first having access to such Confidential Information and trade secrets (whether before or after beginning employment with the Employer) and shall continue during and after the Employee's employment until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

  b.  <u>Protected Activities and Notice of Immunity Under the Economic Espionage Act of 1996, as amended by the Defend Trade Secrets Act of 2016, and/or Applicable State Law</u>. Notwithstanding any other provision of this Agreement:

    i.  The Employee will not be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that is made: (A) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding.

    ii.  If the Employee files a lawsuit for retaliation by the Employer for reporting a suspected violation of law, the Employee may disclose the Employer's trade secrets to the Employee's attorney and use the trade secret information in the court proceeding if the Employee (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

  c.  <u>Non-Competition</u>.

    i.  Because of Employer's legitimate business interest as described herein and the good and valuable consideration, including the pharmaceutical industry knowledge, salary, and monetary benefits from employment, offered to the Employee, the receipt and sufficiency of which is acknowledged, during the term of Employee's employment and for the period beginning on the last day of the Employee's employment with the Employer and continuing for twelve (12) months thereafter, for any reason or no reason and whether employment is terminated at the option of the Employee or the Employer, the Employee agrees and covenants not to engage in any Prohibited Activity; provided, however, that with respect to trade secrets, the Employee shall hold and keep secret and confidential such trade secrets for so long as they remain trade secrets under applicable law. Employee acknowledges that he will have access to proprietary information as Director of Business Development and agrees that he will not use this information to engage in a Prohibited Activity.

    ii.  For purposes of this non-compete clause, "Prohibited Activity" is activity in which the Employee contributes their knowledge (whether directly or indirectly, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern, or any other similar capacity) to an entity engaged in any business that competes with Employer, by selling any product or service sold by Employer. Prohibited Activity also includes activity that may require or inevitably require disclosure of Confidential Information.

    iii.  Nothing herein shall prohibit Employee from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Employee is not a controlling person of, or a member of a group that controls, such corporation.

    iv.  This Section does not, in any way, restrict or impede the Employee (A) from exercising protected rights to the extent that such rights cannot be waived by agreement or (B) from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. To the extent permitted by law, the Employee shall promptly provide written notice of any such order to the Employer to enable Employer to seek a protective order or otherwise prevent such disclosure.

  d.  <u>Non-Solicitation of Employees</u>.

     i. Employee understands and acknowledges that the Employer has expended and continues to expend significant time and expense in recruiting and training its employees and that the loss of employees would cause significant and irreparable harm to the Employer. The Employee agrees and covenants not to directly or indirectly (A) solicit, hire, recruit, attempt to hire or recruit, any employee of the Employer in the twelve (12) months preceding the last day of Employee's employment, or (B) induce the termination of employment of any employee of the Employer during the period beginning on the last day of the Employee's employment with the Employer and continuing for twelve (12) months thereafter.

    e. <u>Non-Solicitation of Customers</u>.

     i. The Employee understands and acknowledges that the Employer has expended and continues to expend significant time and expense in developing customer relationships, customer information and goodwill, and that because of the Employee's experience with and relationship to the Employer, he will have access to and learn about much or all of the Employer's Customer Information (as defined herein). "Customer Information" includes, but is not limited to, names, phone numbers, addresses, email addresses, order history, order preferences, chain of command, pricing information, and other information identifying facts and circumstances specific to the customer and relevant to services.

     ii. The Employee understands and acknowledges that loss of this customer relationship and/or goodwill will cause significant and irreparable harm to the Employer.

     iii. The Employee agrees and covenants, during the period beginning on the last day of the Employee's employment with the Employer and continuing for twelve (12) months thereafter, not to directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of communication, or meet with the Employer's current customers for purposes of offering or accepting goods or services similar to or competitive with those offered by the Employer. This restriction shall only apply to each of the following:

      1. Customers or prospective customers the Employee contacted in any way during the twelve (12) months before the last day of the Employee's employment.

      2. Customers about whom the Employee has trade secret or Confidential Information.

      3. Customers who became customers during the Employee's employment.

      4. Customers about whom the Employee has information that is not available publicly.

    f. <u>Non-Disparagement</u>.

     i. Neither the Employee nor any officer, director of the Employer, nor any spokesperson authorized by the Employer, shall, during Employee's employment or at any time thereafter, intentionally state or otherwise publish anything about the other party which would adversely affect the reputation, image or business relationships and goodwill of the other party in the market and community at large. Employee specifically agrees that during the Employee's employment and at all times thereafter Employee will not make statements or representations, or otherwise communicate, directly or indirectly, in writing, orally, or otherwise, or take any action which may, directly or indirectly, slander, disparage Employer or otherwise act in a fashion designed to injure the business of Employer or its affiliates or their respective current or former officers, directors, employees, advisors, businesses or reputations.

     ii. During Employee's employment and at all times thereafter, the Employee shall fully cooperate with the Employer in defense of legal claims asserted against the Employer and other matters requiring the testimony or input and knowledge of the Employee. If at any time the Employee should be required to cooperate with the Employer pursuant to this Section, the Employer agrees to promptly reimburse the Employee for reasonable documented costs and expenses incurred as a result thereof.

     iii. The Employee agrees that, during Employee's employment and at all times thereafter, the Employee will not speak or communicate with any party or representative of any party, who is known to the Employee to be either adverse to the Employer in litigation or administrative proceedings or to have threatened to commence litigation or administrative proceedings against the Employer, unless the Employee receives the written consent of the Employer to do so, or is otherwise compelled by law to do so, and then only after advance notice to the Employer to the extent permitted by law. Nothing herein shall prevent the Employee from pursuing any claim in connection with enforcing or defending the Employee's rights or obligations under this Agreement.

    g. <u>Disclosure of Agreement</u>. Employee acknowledges and agrees that, during the twelve (12) months following the last day of the Employee's employment, Employee will disclose the existence and terms of this Agreement to any prospective employer, business partner, investor or lender prior to entering into an employment, partnership or other business relationship with such prospective employer, business partner, investor or lender. Employee further agrees that the Employer shall have the right to make any such prospective employer, business partner, investor or lender of Employee aware of the existence and terms of this Agreement.

   4. <u>Acknowledgments</u>.

a. <u>"At-Will" Employment Status</u>. The Employee and Employer acknowledge that Employee's employment with the Employer is and shall remain "at-will". The Employee's employment with the Employer may be terminated at any time and for any reason or no reason by the Employer or the Employee. Neither this Agreement nor the language used herein are intended to create or constitute a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time.

b. <u>Sufficient Consideration</u>. Employee acknowledges and agrees that: (A) signing this Agreement is a condition of employment, and that employment or continued employment is sufficient consideration for signing this Agreement and compliance with the promises made herein; (B) the amount of the Employee's compensation reflects, in part, the Employee's obligations and the Employer's rights under this Agreement; that the Employee has no expectation of any additional compensation, royalties, or other payment of any kind not otherwise referenced herein in connection herewith; and (C) the Employee will not be subject to undue hardship by reason of the Employee's full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof.

c. <u>Eligibility</u>. Employee represents and warrants that Employee has not been convicted of or have pleaded guilty to an offense involving fraud, corruption or immoral behavior, and is not currently being declared by any government agency to be excluded, suspended, proposed for suspension or exclusion, or otherwise ineligible for participation in public procurement programs or other public contracts.

d. <u>Unique Services</u>. The Employee acknowledges and agrees that (A) the Employee's services to be rendered to the Employer are of a special and unique character; (B) that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business, and marketing strategies by virtue of the Employee's employment; (C) and that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the Employer.

e. <u>Dismissal</u>. Employee agrees that any breach by Employee of any of the covenants set forth in this Agreement during Employee's employment, shall be grounds for immediate dismissal of Employee and shall subject Employee to an action for monetary damages, which shall be in addition to and not exclusive of any and all other rights and remedies the Employer may have against Employee.

5. <u>Survival of Covenants</u>. The restrictive covenants in Section 2 of this Agreement shall survive the termination of Employee's employment with Employer and shall be enforceable and remain in effect for the restrictive time periods provided in this Agreement. The existence of any claim or cause of action of Employee against Employer whether or not based on this Agreement shall not constitute a defense to the enforcement by Employer of any promises and restrictive covenants set forth in this Agreement. If any enforcement remedy is sought by Employer pursuant to this Agreement, then the restrictive time periods provided in this Agreement shall be extended by one (1) day for each day Employee failed to comply with the restriction at issue.

6. <u>Ownership of Work Product and Inventions.</u>

a. <u>Ownership</u>. Employer shall own all rights to "Work Product" (as defined below) created by Employee. Employee hereby assigns to Employer all copyright, trademark, trade secrecy, and patent rights in the Work Product. Employee will take all action reasonably requested by Employer to transfer rights to the Work Product to Employer and to permit Employer to obtain copyright, trademark, patent, or similar protection for the Work Product in its own name in any jurisdiction. Employee hereby waives in whole any moral rights which he may have in any such Work Product or any part or parts thereof. Employee will discuss the status of the Work Product with his supervisor or the chief technical officer of Employer on a regular basis so that Employer can decide when to protect or establish its rights. If Employee makes any "Invention" (as defined below) during the Employment Term that Employee believes does not belong to Employer under this Agreement, then Employee will promptly notify his supervisor and will supply a written explanation of the reasons for such belief. Employee is not the owner of any invention as of the date hereof. Employee agrees that even if his employment is terminated by Employer, Employee shall at all times cooperate with Employer in the prosecution or defense of any lawsuit related to Employer activities in connection with any copyright of Employer.

b. <u>Definitions</u>. For purposes of this Agreement, the following terms shall have the following meanings:

(i) "Invention" means any invention, including, without limitation, information, inventions, contributions, improvements, ideas, or discoveries, whether patentable or copyrightable or not, and whether or not conceived or made during work hours.

(ii) "Work Product" means written materials created by Employee, Inventions made by Employee, programs, fixes, routines, inventions, ideas, designs, manuals, improvements, discoveries, processes, and any other results or properties of Employee's efforts whether produced alone or with others, (A) relating to Employer's actual or anticipated business, or (B) made or conceived during working hours or developed with the aid of Employer's personnel or assets.

7. <u>Successors and Assigns</u>.

    a. <u>Assignment by the Employer</u>. To the extent permitted by law, the Employer may assign this Agreement to any subsidiary or corporate affiliate, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer and its successors and assigns.

    b. <u>No Assignment by the Employee</u>. The Employee may not assign this Agreement or any part thereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

8. <u>Warranty</u>. Employee represents and warrants that the Employee is not a party to any non-compete restrictive covenant or related contractual limitation that would interfere with or hinder the Employee's ability to undertake the obligations and expectations of employment with the Employer.

9. <u>Remedies</u>. In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby agrees and acknowledges that the Employer will suffer immediate and irreparable injury, for which monetary damages will not be an adequate remedy. Employee agrees that it would be impossible to calculate Employer's damages from any breach of the covenants set forth in this Agreement. The Employee further acknowledges and agrees that the Employer shall be entitled to immediate injunctive relief, including a temporary restraining order, a temporary injunction, a permanent injunction, or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy. The Employee further agrees and acknowledges that the aforementioned equitable relief shall be in addition to, not in lieu of, and without prejudice to, any legal remedies, monetary damages, or other available forms of relief.

10. <u>Governing Law, Jurisdiction and Venue</u>. This Agreement, for all purposes, shall be construed in accordance with the laws of New York without regard to conflicts-of-law principles. Except as provided by Section 9, any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or federal court located in the state of New York, county of Nassau. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

11. <u>Arbitration</u>. The Parties agree that any dispute or controversy arising out of, in relation to, or in connection with this Agreement, or the making, interpretation, construction, performance or breach thereof, shall be finally settled by binding arbitration under the then current rules of the American Arbitration Association by one (1) arbitrator appointed in accordance with such rules; provided, however, that Employer may pursue a temporary restraining order and/or preliminary injunctive relief, with related expedited discovery for the Parties, in a court of law, and, thereafter, require arbitration of all issues of final relief. The arbitrator may grant injunctive or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court of competent jurisdiction. The costs of the arbitration, including administrative and arbitrator's fees, shall be shared equally by the Parties. Each Party shall bear the cost of its own attorneys, fees and expert witness fees. All proceedings shall be conducted in New York, Nassau County or other mutually agreeable site. The duty to arbitrate provided herein shall survive the termination of this Agreement. Except as otherwise provided herein, the Parties hereby waive trial in a court of law or by jury. All other rights, remedies, statutes of limitation and defenses applicable to claims asserted in a court of law will apply in the arbitration.

12. <u>Entire Agreement</u>. Except as otherwise set forth herein, this Agreement [and, if applicable, a separate offer letter agreement between Employee and Employer] contain all the understandings and representations between the Employee and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

13. <u>Modification and Waiver</u>. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and the Employer. No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power,

or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

14. Severability.

    a. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding on the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

    b. The Parties further agree that any such court is expressly authorized to modify any unenforceable provision of this Agreement in lieu of severing the unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or by making any other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law.

15. Headings. Captions and headings of the sections and paragraphs of this Agreement are intended solely for the convenience of reference and should not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions of this Agreement.

16. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart's signature page of this Agreement, by facsimile, electronic mail in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, has the same effect as delivery of an executed original of this Agreement.

17. Construction. The parties have participated jointly, with counsel of their own choosing, in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement. Each party waives any right to such presumption.

18. Acknowledgement. Employee acknowledges that he has had the opportunity to consult with independent counsel of his own choice concerning this Agreement, and that he has taken advantage of that opportunity to the extent that he desires. Employee further acknowledges that he has read and understands this Agreement, is fully aware of its legal effect, and has entered into it voluntarily based on his own judgment.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date above.

EMPLOYEE:

Brant Cherne

Signature: *Brant Cherne* (DocuSigned by: 5A71673AA8A5414...)

Print Name:  Brant Cherne

Title:  Director of Business Development

Date:  4/21/2022

EMPLOYER:

Hercules Pharmaceuticals, Inc.

By: *Sara Amani* (DocuSigned by: DA56C407D559485...)

Print Name:  Sara Amani

Title:  Chief Executive Officer

Date:  1/28/2022

8